UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| Case No. | CR 14-00338(B)-SJO | Date | February 7, 2018 |
|---|---|---|---|

| Present: The Honorable | S. James Otero |
|---|---|
| Interpreter | Not Required |

| Victor Paul Cruz | Not Present | Mack Jenkins |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder, Tape No. | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Marquis Shaw (4) | not | xx | | Richard W. Raynor | not | xx | |
| Joshua Perez (13) | not | xx | | Humberto Diaz | not | xx | |
| Anthony Ingram (31) | not | | xx | Alan Eisner | not | xx | |

| Proceedings: | **(IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT SELF-AUTHENTICATING RECORDS** [Docket No. 3148]; **ORDER GRANTING THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE REFERENCES TO DEFENDANT INGRAM'S MINOR CHILD'S HEALTH STATUS** [Docket No. 3157]; **ORDER DEFERRING ON RULING ON THE GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE REFERENCES TO VICTIMS' CRIMINAL HISTORY AND CURRENT CUSTODIAL STATUS** [Docket No. 3182] |
|---|---|

Before the Court are the following motions (collectively, "Motions"), filed by the Government:

(1)   Motion in Limine to Admit Self Authenticating Documents ("Motion # 1"), filed January 30, 2018; opposed by Defendant Joshua Perez ("Perez") on February 2, 2018 ("Perez Opp'n # 1"); the Government filed a reply on February 5, 2018 ("Reply # 1");

(2)   Motion in Limine to Exclude References to Defendant Anthony Ingram's ("Ingram") Minor Child's Health Status ("Motion # 2"), filed February 1, 2018; Ingram filed his notice of non-opposition on February 2, 2018;

(3)   Motion in Limine to Exclude References to Victims' Criminal History and Current Custodial Status ("Motion # 3"), filed February 2, 2018; opposed by defendants Perez and Marquis Shaw ("Shaw") on February 2, 2018 and February 3, 2018, respectively ("Perez Opp'n # 3" and "Shaw Opp'n # 3", respectively); the Government filed a reply on February 5, 2018 ("Reply # 3").

The Court found these matters suitable for disposition without oral argument and vacated the hearing set for February 6, 2018. For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** Motion #1 and **GRANTS** Motion # 2 and **DEFERS RULING** on Motion # 3.

I.   FACTUAL BACKGROUND

In the Second Superseding Indictment, co-defendants Perez, Ingram, and Shaw (collectively, "Defendants") are

charged with participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy under 18 U.S.C. § 1962(d) ("Count One"). (Second Superseding Indictment ("SSI"), ECF No. 2968.) Count One arises from Defendants' alleged participation in the Five Deuce Broadway Gangster Crips criminal enterprise (the "BGC") and its various cliques. (SSI 14.) Defendants are three of the seven co-defendants named in the SSI and are scheduled for trial on February 6, 2018.

II. DISCUSSION

    A. Legal Standard

Motions in limine are "important tool[s] available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (9th Cir. 1997). Regardless of a court's initial decision on a motion in limine, however, it may revisit the issue at trial. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42).

    B. Motion # 1 to Admit Self Authenticating Documents

The Government seeks to introduce at trial records from the California Employment Development Department ("EDD") ("EDD Records"), 911 telephone calls concerning a murder alleged in the SSI (the "911 Calls"), and cellular telephone records from Metro PCS ("Metro PCS Records"). (Mot. # 1 1, ECF No. 3148.) The Government contends all the records it seeks to introduce are self-authenticating under Federal Rule of Evidence ("Rule") 902 and fall under one or more exceptions to the rule against hearsay under Rule 803. (Mot. # 1 1.)

        1. EDD Records

The Government intends to introduce the EDD Records as evidence that Shaw and Perez were not employed during a specified period of time. (Mot. # 1 1-2.) Perez contends that these records are irrelevant to the instant case. (Perez Opp'n # 1, ECF No. 3194.) Perez argues that the EDD Records do not necessarily show a history of unemployment because a person can work "informally," or else report income using a different name and/or personal identifying information, without such employment history being reflected in the EDD Records. (Perez Opp'n # 1 2.) The Ninth Circuit has held that evidence of sudden or unexplained wealth is relevant and admissible in drug conspiracy trials if it creates a reasonable inference that the unexplained wealth came from the drug conspiracy. *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir.1987). The Court agrees that Defendant's unemployment history is highly probative because it supports the inference that Shaw and Perez accumulated a large amount of wealth during the alleged drug conspiracy from illegitimate sources. Furthermore, if Perez wants to argue that he accumulated his wealth through legitimate means, which he has not done in his pleadings, he may do so at trial, but this does not preclude the Government from presenting its evidence of Defendant's EDD Records.

The Government argues that the EDD records are self-authenticating under Rule 902(4) because each EDD Record is a copy of an official record that is signed and certified by an EDD official authorized to make such a certification. (Mot. # 1 2.) Rule 902(4) provides for the self-authentication of:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> A copy of ... a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

Fed. R. Evid. 902(4). The EDD Records that the Government plans to introduce state that "there were no employer wages reported" for Perez and Shaw during a specified time and are signed by a Senior Accounting Officer in the Tax Branch, Document Management Group of the EDD. (Mot. # 1, Exs. A-1 and A-2.)

The Government also argues that the EDD Records will be used to indicate the absence of records of employment history, which may be admitted pursuant to Rule 803(10), which does not exclude public records by the rule against hearsay if they are admitted to prove that a record or matter did not occur or exist. (Mot. # 1 2.) Rule 803(10)(b) requires that, "in a criminal case, a prosecutor who intends to offer a certification provides written notice of that intent at least 14 days before trial, and the defendant does not object in writing within 7 days of receiving the notice--unless the court sets a different time for the notice or the objection." Fed. R. Evid. 803(10)(b). The Government produced the EDD Records to defense counsel on December 7, 2017, and provided its intent to introduce the EDD Records on at trial on January 27, 2018, which is ten days before trial. (Mot. # 1 2.) The Government asks the Court to find the notice was sufficient time to challenge the accuracy of the EDD Records, given the anticipated length of the Government's case-in-chief. (Mot. # 1 2-3.) Defendants have not argued that the notice given was insufficient. The Court finds that ten days is sufficient notice and thus does not preclude the introduction of the EDD Records.

The Court finds that the evidence satisfies Rule 404(b) and concludes that the probative value of the Perez and Shaw's unemployment history as evidence that their unexplained wealth came from the drug conspiracy is not substantially outweighed by unfair prejudice. The Court finds that the records meet the requirements of Rule 803(10) and are self-authenticating under Rule 902(4), and permits the Government to introduce the EDD Records.

    2.    <u>911 Telephone Calls</u>

The Government moves to introduce two 911 telephone calls from residents of the neighborhood where victim W.S. was murdered on May 10, 2012 ("911 Call # 1" and "911 Call # 2", respectively), alleged as Overt Act 46 of Counts 1 and 3 in the SSI. (Mot. # 1 3.) The callers reported that they heard dozens of gunshots and observed a suspect vehicle in the area. (Mot. # 1 3-4.) In relevant part, Rule 902 provides that certified domestic records of a regularly conducted activity are "self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902(11). Such records consist of:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record–and must make the record and certification available for inspection–so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Here, the Government provided a certificate signed by the Los Angeles Police Department's ("LAPD") Communication Division authenticating the audio files of the 911 Calls by providing that they "were prepared by personnel of the City of Los Angeles in the ordinary scope and course of business at or near the time of the acts or events," which complies with the requirements of Rule 803(6)(A)-(C).[1] (Mot. # 1, Ex. B-3.) The Government also argues that the 911 Calls are self-authenticating pursuant to Rule 902(4). The Ninth Circuit has explained that "[h]earsay statements on a 911 tape can be admitted into evidence as either a 'public record,' Fed. R. Evid. 803(8)(B), or a 'business record,' Fed. R. Evid. 803(6)." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) (citing *United States v. Sallins*, 993 F.2d 344, 347-48 & n.4 (3d Cir. 1993); *United States v. Smith*, 521 F.2d 957, 964-65 (D.C. Cir. 1975)).

Here, the 911 Calls are relevant because they make it more probable that Defendant and his car were involved in the crime. However, the statements are hearsay because they were made out of court and are being offered by the Government to prove the truth of the matter asserted. Therefore, they are inadmissible unless they fall under an exception to the hearsay rule and may still be excluded if unduly prejudicially. The Government contends that the 911 Calls fall under multiple hearsay exceptions because the calls contain witnesses' excited utterances and present sense impression. (Mot. # 1 6.) Hearsay is generally inadmissible unless it is exempt under Rule 801(d) or falls under an exception under Rules 803 and 804. The present sense impression exception from the rule against hearsay applies to statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The excited utterance exception applies to statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To qualify under either exception, an out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection. *See United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), *overruled on other grounds by United States v. DeBright*, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

The Court considers whether each 911 Call falls under a hearsay exception in turn.

      a.      <u>911 Call # 1</u>

The witness stated that he or she "just heard about 50 gunshots right outside of my house," and that it sounded like the gunshots were coming from the rear of his or her location. (Mot. # 1, Ex. B-1.) Both statements fall under the present sense impression exception to hearsay, because the witness is describing an event that occurred immediately before the declarant made the statement. Fed. R. Evid. 803(1). The remainder of the 911 phone call does not fall within any hearsay exception, because he or she is not making a statement about an event that occurred while or immediately before the declarant made the statement, and will thus not be admitted.

      b.      <u>911 Call # 2</u>

In 911 Call # 2, the caller describes the events that the witness perceived that evening during the shooting. (Mot.

---

[1] Records are admissible under Rule 803(6)(A)-(C) if: "(A) the record was made at or near the time by–or from information transmitted by–someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and] (C) making the record was a regular practice of that activity. Fed. R. Evid. 803(6)(A)-(C).

# 1, Ex. B-2.) During the 911 Call # 2, the witness told the police officer that she "can smell the gun powder" and that it had been "maybe ten minutes" between the first time the witness heard the vehicle pass by and the time of the phone call. (Mot. # 1, Ex. B-2.) The witness stated that she heard the vehicle drive down the block twice before she heard bullets. (Mot. # 1, Ex. B-2.) The Advisory Committee Notes to Rule 803(1) state that "precise contemporaneity" often is impossible and that therefore a slight time lapse between the event and the statement is allowable. Fed.R.Evid. 803(1) advisory committee note. Although the incident was complete when the witness made the telephone call, any delay does not suggest that there was time for the witness to consciously reflect and to fabricate a story, and thus the contemporaneous requirement is satisfied here. The Court will admit 911 Call # 2 as a present sense impression.

### 3. Metro PCS Records

The Government moves to introduce subscriber records and call detail records for a cellular phone subscribed to Perez at the time of the murder, as well as subscriber records for another BGC member who called Perez shortly before and after the Alleged VICAR Murder occurred. (Mot. # 1 7-8.) The Government attached the records to its Motion, as well as a signed certification. (Mot. # 1, Ex. C-1, C-2, C-4, C-5.) The signed certification states that:

> A) Such records were made at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;
> B) Such records were kept in the course of regularly conducted business activity;
> C) The business activity made such records as a regular practice; and
> D) If such record is not the original, such record is a duplicate of the original.

(Mot. # 1, Ex C-3.)

Perez does not oppose the introduction of subscriber records for a cellular phone subscribed to defendant Perez at the time of the murder. (Perez Opp'n # 1 3.) However, Perez opposes the introduction of the call detail records of the cellular phone subscribed to defendant Perez at the time of the murder without a proper foundation of what the various entries in that exhibit show. (Perez Opp'n # 1 3-4.) The Government plans to have Los Angeles Police Department ("LAPD") Detective/Task Force Officer Sean Hansen testify as an expert who will interpret the Metro PCS Records. (Reply # 1 2, ECF No. 3206.) The Court finds that the Metro PCS Records meet the requirements of Rule 803(6) and are self-authenticating under Rule 902(11). The Court permits the Government to introduce the Metro PCS Records.

In summary, the Court permits the introduction of the EDD Records and the Metro PCS Records. The Court allows the Government to introduce the statements from 911 Call # 1 that the witness "just heard about 50 gunshots right outside of my house," and that it sounded like the gunshots were coming from the rear of his or her location, but precludes the introduction of the remainder of the conversation, and permits the introduction of 911 Call # 2.

### C. Motion # 2 to Exclude References to Defendant Anthony Ingram's Minor Child's Health Status

The Government moves to exclude evidence of Defendant Ingram's minor child's health status because it is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

relevant under Rule 402 to the crimes charged. (Mot. # 2, ECF No. 3157.)[2] The Court agree and **GRANTS** the Government's Motion # 2 to Exclude References to Defendant Anthony Ingram's Minor Child's Health Status.

    D.    <u>Motion # 3 to Exclude References to Victims' Criminal History and Current Custodial Status</u>

The SSI alleges that on March 10, 2003, Defendant was driving with three other BGC members when he shot a Glock 9mm caliber semi-automatic handgun several times into another vehicle carrying victims L.R., D.W., and L.S. (collectively, the "Victims"), killing the driver, L.R., and wounding a passenger, D.W. (the "Alleged VICAR Murder"). (SSI 19.) The SSI attributes the Alleged VICAR Murder to Shaw in four separate instances: first, as an Overt Act in Count One (SSI 19); second, in a Special Sentencing Allegation (SSI 40); third, in a Violent Crimes in Aid of Racketeering ("VICAR") Count ("Count Two") of the SSI (SSI 41-42); and finally, in a Use of a Gun During Crime of Violence Count ("Count Twenty") of the SSI. (SSI 63.) All three Victims have criminal histories, but only L.R. and L.S. appear to have prior felony convictions. (Mot. # 3 1, ECF No. 3182.) Victim L.S. was convicted of murder in 2008, after the date of the Alleged VICAR Murder, and is currently incarcerated in California state prison. (Mot. 1.) On February 1, 2018, Shaw's counsel informed the Government that Shaw intended to elicit testimony concerning victims L.R. and L.S.'s prior criminal histories, as well as L.S.'s current custodial status. (Mot. # 3 1.) Counsel for Perez and Ingram also indicated that they may elicit testimony regarding the Victims' criminal histories. (Mot. # 3 1.)

The Government argues that the Victims' criminal histories are inadmissible under Rule 404 because victim character evidence supporting a claim of self-defense is limited to reputation or opinion evidence, and does not include specific prior acts. (Mot. # 3 2.) Furthermore, in his post-arrest interview, Shaw indicated that he did not know the Victims prior to shooting them, so he may not introduce their criminal histories in support of a claim of self-defense. (Mot. # 3 1-2.) Shaw argues that L.S.'s 2008 murder conviction can be introduced as evidence under Rule 404(b) to corroborate the testimony of multiple witnesses to the Alleged VICAR Murder that L.S. was involved in confrontations with the occupants of other cars, which is evidence that the Victims were actually the aggressors. (Shaw Opp'n # 3 4-5.) Shaw contends that L.S.'s murder and car theft convictions are evidence of his intent to rob and kill. (Shaw Opp'n # 3 5.) Shaw also argues that L.R.'s prior conviction for possession of a firearm for carrying a gun in his car is evidence of his modus operandi for carrying a weapon in his car, which corroborates the theory that L.R. had a handgun in his car and shot at Shaw's car during the Alleged VICAR Murder. (Shaw Opp'n # 3 6.) Rule 404(b) prohibits the use of evidence of a crime, wrong or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, evidence of other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Shaw fails to explain how L.S.' prior conviction prove his modus operandi, which Black's Law Dictionary defines as a "method of operating or a manner of procedure," or intent to commit violence against Defendants. Instead, Shaw is actually attempting to introduce L.S.'s prior conviction "to prove [L.S.'s] character in order to show that on a particular occasion [L.S.] acted in accordance with the character," which is expressly forbidden under Rule 404(b). Fed. R. Evid. 404(b)(1).

The Government contends that L.S.'s custodial status is irrelevant because L.S. is incarcerated based on a conviction in 2008 that occurred after the Alleged VICAR Murder. (Mot. # 3 2.) Defendant Shaw argues that L.S.'s 2008

---

[2] On February 2, 2018, Defendant Ingram filed a notice of non-opposition to the Government's Motion # 2 to Exclude References to Defendant Anthony Ingram's Minor Child's Health Status. (ECF No. 3184.)

murder conviction is relevant because it is evidence of L.S.'s pertinent trait of being a "murderous car thief," which may be introduced during cross-examination pursuant to Rules 404(a)(2)(B) and 405(a). (Shaw Opp'n # 3 3-4, ECF No. 3199.) Shaw also contends that L.S.'s character or character traits, which he alleges is an essential element in determining whether Defendants are entitled to the defense of self-defense because L.S. was the initial aggressor, may be proven by relevant specific instances of the person's conduct, pursuant to Rule 405(b). (Shaw Opp'n # 3 4.) However, in *United States v. Keiser*, the Ninth Circuit determined that even though a victim's "violent character" is relevant, it is not an "essential element" of a defendant's self-defense argument in a shooting case, and thus declined to permit the defendants to introduce specific violent or aggressive actions of the victims to bolster the self-defense claim. 57 F.3d 847, 857 (9th Cir. 1995). Accordingly, the Court will not permit Defendants to introduce the Victim's criminal history to bolster their self-defense arguments.

Shaw contends that L.R.'s criminal history should be admitted as relevant to explain that the investigation into the Alleged VICAR Murder was flawed, because L.R.'s criminal history provided investigators with a reason to investigate the Victims as shooters and aggressors, but the investigators failed to do so. (Shaw Opp'n # 3 6-7.) The Government argues that the investigators tested L.R. for gunshot residue and L.R.'s prior convictions have no apparent relation to the likelihood that other occupants of the car would have possessed a firearm. (Reply # 3 4-5, ECF No. 3206.) The Court finds that introduction of L.R.'s criminal history for the purpose of explaining that the investigation of the Alleged VICAR Murder investigation was flawed, without more information, is prohibited under Rule 403 because it has little or no probative value and would likely confuse and mislead the jury.

Shaw also argues that L.S. may be properly impeached with evidence of his 2008 murder conviction pursuant to Rule 609 because the Government plans to call L.S. as a witness. (Shaw Opp'n # 3 5.) If victim L.S. testifies at trial as a government witness, the Government contends that Defendants may only impeach L.S. by inquiring into whether he sustained a prior felony conviction without describing the nature of the offense. (Mot. # 32-3.) Defendant Perez contends that it is premature to rule on this issue, because the defense does not know what the Victims will say during their testimony, and requests that the Court decline to rule on the limitations on the Defendants' cross-examination and impeachment of the Victims until there is a proper factual framework from where such rulings can be made. (Perez Opp'n #3, ECF No. 3195.)

A party may generally impeach a witness with evidence of a prior conviction. Fed. R. Evid. 609. For "any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the crime required proving—or the witness's admitting—a dishonest or false statement." Fed. R. Evid. 609(a). The Ninth Circuit has outlined five factors to guide the district court's decision whether to admit evidence under this rule: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000) (citing *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc)). The first factor weighs against admission because murder is not probative of veracity. *See Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) ("Acts of violence . . . which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity . . . . [convictions] of violent or assaultive crimes generally do not [relate to credibility]; traffic violations, however serious, are in the same category."). The second factor weighs against inclusion because L.S. was convicted of murder five years after the Alleged VICAR Murder. The Court does not have enough details about the facts underlying the 2008 murder conviction to make a determination on the third factor. The Court also does not have enough information at this time to determine how to rule on the fourth and fifth factors. Without more information, the Court declines to rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

on this issue at this time.

The Court **DEFERS** ruling on the Government's Motion # 3 to Exclude References to Victims' Criminal History and Current Custodial Status.

III.     RULING

For the foregoing reasons, the Court **GRANTS** the Motion.

IT IS SO ORDERED.